Benjamin Tagger v. Strauss Group Ltd. I'm sorry. May I please do the quote? The subject of the appeal is that two questions that were asked. First one, the lower court found the case with lack of diversity. The second question was for non-convenience. First, on the lack of diversity. Repeatedly I brought up the subject of the Treaty of Friendship, Commerce and Navigation between Israel and the United States. That is your argument for there being jurisdiction. You do not make an argument that you are a citizen of a diverse state. You make the argument that that treaty gives you that right. Your Honor, as I could not find a lawyer. And for me to indulge in other directions would have been too difficult. So you don't make that. Too difficult. But I thought that the case of the treaty makes it very clear. The text makes it very clear. And I believe that the Second Circuit itself referred to the not less favorable for a member or citizen of the other party but to have the same rights as an American citizen. And no less, not all of them have this disclose. This agreement, this treaty does. What was amazing for me here is that the lower court or nor the other party, the other side, even referred to the fact or to that treaty, even though I repeatedly brought it up. The other subject is foreign nonconvenience. On the foreign nonconvenience, there are a few points that can be made. The first one, the lawyers, the American lawyers of Strauss have confirmed that I am not free to come and go from Israel. To my knowledge, and I cannot confirm it, but to my knowledge, they managed to get a warrant for my arrest. If I may, this is $2,500 debt. That's really what it was. So I obviously got somebody pissed off. But the fact that I cannot freely come and go really makes it impossible for me to look at Israel as an alternative court. In addition. I mean, if you go there, you won't be able to leave.  I don't know because somehow or other they avoided any contact, direct contact with me, although I tried to have direct contact with them, not with the lawyers here, but in Israel. So. But in addition, there are other things. My home is here. I've been here since 1971. Yes, I traveled around the world. Yes, I lived in different places during those years. But my family is here. My children are here. My grandchildren are here. This is why I'm a domicile. And the judge recognized that in the law court. So I believe that the approach that I read in the Alcoa case and the Gilbert case, that the approach is that when someone is in his home territory, he's suing someone in his home, it takes a lot to move it out. And I've passed my time. Yes, you have. But you reserved a couple of minutes for rebuttal. Why don't you save that time and we'll hear from Strauss. Okay. Thank you, Your Honor. Thank you. May it please the Court. Sylvia Ostrower with Hampton, Andrews-Girth on behalf of Appali Strauss Group Limited. Sorry. I would like to respond to Mr. Dagger's argument on the issue of subject matter jurisdiction. The first point I'd like to make is that he asserted as the basis for subject matter jurisdiction diversity of citizenship in the lower court. And then he lost on that issue. But when he appealed to this court, he did not challenge the decision on that basis. He asserted a completely new basis for subject matter jurisdiction. And on jurisdiction, a person can issue, can assert a new basis. Absolutely. So all we have to do now is look at that new basis and see whether that new basis is there. Exactly. So on the issue of diversity, our position is he has abandoned that issue. He didn't challenge it. So there's no reason why Judge Kogan's decision on the issue of diversity needs to be revisited. On the issue of the new basis that he asserted, which is federal question, which has not been raised again today, that the treaty doesn't really, I'm sorry, the claim doesn't really arise under the treaty. He's not, his claim is not directly related to the rights that are provided for under the treaty. His claim relates to a completely separate issue that has to do with an Israeli regulation that was applied in Israel. So we don't see any basis for federal question jurisdiction in this case. And, by the way, in terms of the treaty's application for diversity, the courts are clear that the treaty doesn't really do away with the diversity requirement. It's not like every beneficiary of the treaty can bring a claim in U.S. federal court against any defendant, regardless of citizenship. All it means is that a beneficiary of the treaty is subject to the same standard as a U.S. citizen plaintiff. And a U.S. citizen plaintiff has to prove that there is diversity, right? He has to prove it also. And he can't, because here there are two aliens on both sides of the action. On the issue of foreign nonconvenience, I don't know on what basis Mr. Taggart says that we got a warrant for his arrest. There's no evidence in the record about that. I'm not aware that that has happened. Yeah, but this isn't a case of somebody looking to come to New York for forum shopping or somebody. This is a case of somebody who is here. I mean, assuming that there were jurisdiction, which is a much harder question. But if there is jurisdiction, somebody who sues in New York, because that's where they live and that's where everything is, and they are not young and want to go. The presumption is that the case can go in New York. We don't allow it for nonconvenience when there's some bit of forum shopping. But generally, a plaintiff can pick the jurisdiction where they're in if a defendant is also suable there. Which we don't know. Our position is. Yeah, well, we never reach that. Exactly. The Court didn't reach it, but our position is there's no personal jurisdiction over shops. But, sure, a plaintiff can sue in his own forum, and that's the reason why Judge Kogan gave deference to his choice. But that's not the end of the inquiry. You still have to balance the private and public interest factors, and here they overwhelmingly weigh in favor of dismissal. This is no doubt an Israeli case. It has to do with the application of an Israeli law in connection with an execution proceeding that is ongoing in Israel. And between two Israeli parties and about a breach of the settlement agreement that was entered into in Israel, the evidence is there. Most of the witnesses, maybe with the exception of Mr. Taggart, are there. The laws are the laws of Israel. And, you know, Israel definitely has a much more, a greater interest in the resolution of the case. That isn't the basis for forum nonconvenience. It isn't whether the other State has a greater interest. It is really whether it is truly inconvenient to try it in the State where the person had a right to bring it. I'm a little, no, no. I think I'm showing that I'm, I have some very, fairly strong views on forum nonconvenience. Well, in this case, we think that it would be inconvenient not only for the defendant, but also for the court, which would have to deal with a lot of... It's always inconvenient for the court. They have too much business, and if they can't get rid of it on forum nonconvenience, they love it. That's one of my reasons for strong views. Well, here, to be fair, this is really an alternate reason for dismissal. The main reason is that simply the court doesn't have the power to hear the case. Thank you. Mr. Taga, you reserve two minutes to respond. As to the forum nonconvenience, I was not aware, and the e-mail that I received from the attorneys here from July 2018 clearly indicates that there's no ongoing case in Israel. And to my knowledge, there was no ongoing case in Israel. But we are dealing with an extremely powerful company, and they seem to be able to do things that are magical. So the reality of it, the reality of this is that if I have to go back to Israel, I will not. But let me just say my problem is with whether we have federal jurisdiction. And if we do not, then we are simply not allowed to hear your case, however valid it is and however convenient. So the question for us is to figure out whether this treaty in fact does what you say it does or whether instead the treaty simply says you have to be treated like everybody else but then have to prove federal jurisdiction. That's my problem. I understand that, Your Honor. And it seems to me that the 22-4, the treaty about Israeli corporations, basically treats Israeli corporations as American corporations, that it was created in any state of the United States other than the forum state. So in reality, by doing so, you do have the diversity and you have an American corporation. That's what the treaty says. And I hope it is convincing, obviously, but that's what it says. And it seems to me, and I'm not a lawyer, that when I'm told that I have the same right as an American citizen, no less advantageous in like situations, basically if an American citizen was in my position, he would have had no problem because the only issue is alien versus alien. That was the issue that the judge referred to. So the alien versus alien should not exist if the American citizen was in my place. And the same doesn't exist for an Israeli corporation that is considered a U.S. corporation. All right. We have your argument. Thank you very much. Thank you very much. Thank you both very much. That concludes the argument portion of our calendar. So I will ask the clerk to adjourn court. Thank you.